UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CAROLE L. GUTTERMAN,

                    Plaintiff,

    -against-

COUNTY OF SUFFOLK *et anno.*,

                    Defendant.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
20-CV-4168(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this action that initially arose under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12182 *et seq.* and corresponding New York state laws, is Defendant Suffolk County's ("Defendant" or the "County") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]  *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), Docket Entry ("DE") [85]. After prior motion practice, the only remaining cause of action is for negligence under New York state law.[2]  Plaintiff Carole Gutterman ("Plaintiff" or "Gutterman") opposes the motion.  *See* Plaintiff's Opposition to Motion for Summary Judgment

---

[1] Defendant Suffolk County Department of Public Works – Buildings, Operations and Maintenance has not been dismissed.  It falls under the purview of Suffolk County, however, *see* [34-5], which neither party disputes, and the claims against it are not addressed separately.  Accordingly, the Court refers only to Suffolk County throughout this opinion.

[2] Diversity jurisdiction exists for the only remaining cause of action, which arises under state law, pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship and the amount in controversy exceeds $75,000.  The parties do not dispute this.

("Pl.'s Opp'n"), DE [86].  For the reasons set forth herein, Defendant's motion for summary judgment is denied.

## I.   BACKGROUND

### A.   <u>Relevant Facts</u>[3]

#### 1.   The Parties and Relevant Accident

This action arises out of a March 18, 2019 trip-and-fall accident (the "Accident") that occurred in the lobby of the Suffolk County Supreme Court Courthouse located at 1 Court Street, Riverhead, New York (the "Courthouse").  Pl.'s 56.1 Counterstmt. ¶ 3.  Plaintiff resides in Hawley, Pennsylvania and is a nurse who consults on, and provides testimony in, medical malpractice cases, including cases pending in New York.  *Id.* at ¶¶ 1, 10-11.  The County is a municipal corporation organized pursuant to the laws of the State of New York.  *Id.* at ¶ 2.  The County owned, controlled, managed, maintained, and operated the Courthouse in which, and, at the time, the Accident occurred.  *Id.* at ¶¶ 73, 106.

On March 18, 2019, Gutterman was at the Courthouse to testify in a pending state court action.  *Id.* at ¶ 12.  Due to a prior, unrelated, motor vehicle accident, she was using a cane as she went through the Courthouse's security checkpoint.  *See* Defendant's Response to Plaintiff's Rule 56.1 Statement of Facts ("Def.'s 56.1 Resp."), DE [87-1], ¶ 4.  Court personnel instructed Gutterman to place her belongings,

---

[3] The facts are drawn from the Complaint ("Compl."), DE [1]; Amended Complaint ("Am. Compl."), DE [38]; Answer to the Amended Complaint ("Ans."), DE [54]; Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Def.'s 56.1 Stmt."), DE [85-27]; Plaintiff's Response to Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1 Counterstmt."), DE [86-1]; Plaintiff's Rule 56.1 Statement, DE [86-2] ("Pl.'s 56.1 Stmt."); as well as the admissible evidence submitted in support of the parties' submissions.

including her cane, on the conveyor belt of an x-ray scanner and walk through a magnetometer. *Id.* at ¶ 13.  After placing her items on the conveyer belt, Plaintiff walked through the magnetometer, and a Court officer told Gutterman to "get [her] stuff off the conveyor belt." *Id.* at ¶ 6; Declaration of Dana L. Kobos ("Kobos Decl."), DE [85-1], Ex. H ("Gutterman Dep. Tr.") at 36:9-12.  Although the magnetometer was on the same level at which Gutterman was walking, "[t]he conveyer belt to get [her] stuff off was on a step up." *Id.* at 25:8-9.  According to Plaintiff, "there was no sign, no warning, [and] no visual cues" regarding the platform and that "no one said 'do not step up onto the platform.'" Pl.'s 56.1 Stmt. ¶ 8.  According to Gutterman, "there was not a space at the end of the conveyor belt which would have permitted [her] to retrieve [her] belongings . . . without stepping into the platform." *Id.* at ¶ 9.  Photographs of the Courthouse entrance, including the magnetometer and conveyer belt, are below:



3





Kobos Decl. Exs. J, M, N.

While retrieving her belongings, Plaintiff's "right toe hit something, and [she] fell on the floor," landing on her right side and her back. Gutterman Dep. Tr. 24:24 – 25:1, 35:13-15. Gutterman testified that she was fully through the magnetometer, that her "foot hit a step" causing her to fall, and that at no point did she "step up onto anything." *Id.* at 37:22 – 38:2-16. Defendant asserts that Gutterman's "foot was never on the platform." Def.'s Mem. at 6. To this end, the County states that Gutterman "did not know that the platform existed before she fell on it because she did not see the platform and wasn't looking at it." *Id.* Courthouse paramedics attended to Gutterman at the site of the Accident, *see* Pl.'s 56.1 Stmt. ¶ 11, and she

4

was subsequently transported to the Peconic Bay Medical Center where she was treated for a "comminuted displaced fracture involving the head and surgical neck of the right humerus." *Id.* at ¶ 13.

### B.    Procedural Background

On May 20, 2019, Plaintiff served a Notice of Claim on Suffolk County as required pursuant to New York General Municipal Law § 50-h.  Compl. ¶ 39.  She then served an amended Notice of Claim on June 5, 2019.  Kobos Decl. Ex. C.  On January 15, 2020, Suffolk County held a hearing pursuant to New York General Municipal Law § 50-h, at which Plaintiff testified.  *Id.* at Ex. D.

By way of a Complaint dated September 5, 2020, Plaintiff commenced this action against Suffolk County, Suffolk County Department of Public Works, State of New York, Office of Court Administration, New York State Unified Court System, Smiths Detection, Inc., and Smiths Detection LLC.  DE [1].  Plaintiff subsequently voluntarily dismissed her claims against the State of New York, Office of Court Administration, New York State Unified Courts, Smiths Detection, Inc., and Smiths Detection, LLC.  DE [30], [31].

On February 2, 2022, Plaintiff filed an Amended Complaint ("Am. Compl."), which is the operative pleading in this action, DE [38], in which she asserts causes of action for:  (1) violation of the ADA; (2) violation of the Rehabilitation Act of 1973; (3) violation of the New York State Human Rights Law; (4) violation of the Suffolk County Human Rights Law; (5) violation of the New York State Civil Rights Law; and (6) common law negligence.  *Id.* at ¶¶ 42-133.  On August 16, 2022, this Court

5

dismissed all causes of action other than that for negligence under New York State law. *See* DE [90], [95]. Accordingly, the only remaining cause of action is for common law negligence against Suffolk County. On May 15, 2025, Suffolk County filed the instant motion for summary judgment on the grounds that: (1) Suffolk County did not receive the requisite prior written notice of a defective or dangerous condition as required by the Suffolk County Charter § C8-2A; (2) Gutterman fails to establish the existence of a dangerous or defective condition at the Courthouse; and (3) the allegedly unsafe condition at the Courthouse was open and obvious to Plaintiff. *See* Def.'s Mem. at 1. Gutterman opposes the motion. *See generally* Pl.'s Opp'n. For the reasons set forth herein, the motion is denied.

## II.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In determining whether summary judgment is warranted, "the

6

court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"); *Artis v. Valls*, No. 10-CV-427(GTS)(TWD), 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment."). "[T]he Court may decide all questions of law on summary judgment." *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022) (collecting cases).

## III.   DISCUSSION

### A.   Preclusion of Expert Report

Initially, the County seeks to preclude the Court from considering the report of Plaintiff's expert, Richard Robbins, R.A., in deciding its motion for summary judgment.[4] Def.'s Mem. at 14-22. Where appropriate, Courts may preclude expert testimony in deciding a motion for summary judgment. *See, e.g., Hananburgh v. Metro-N. Commuter R.R.*, No. 13-CV-2799(JMF), 2015 WL 1267145, at *9 (S.D.N.Y. Mar. 18, 2015) (considering and excluding certain expert testimony in deciding a motion for summary judgment) . Pursuant to *Daubert v. Merrell Dow Pharms., Inc.*,

---

[4] The request to preclude the expert report is made simultaneously with, and in the same filing as, the motion for summary judgment.

509 U.S. 579, 580, 579 S. Ct. 2786, 2799 (1993), the trial Court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Nevertheless, "[n]othing in *Daubert*, or any other Supreme Court or Second Circuit case, mandates that the district court hold a *Daubert* hearing before ruling on the admissibility of expert testimony, even where such ruling is dispositive of a summary judgment motion." *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 352 (S.D.N.Y. 2023).

Robbins is an architect who inspected the Courthouse and provided an expert opinion regarding the conditions of its safety screening area. *See* Kobos Decl. Ex. R ("Robbins Report"), DE [85-19], at 1. Robbins opined that the platform from which Plaintiff sought to retrieve her cane presented three dangerous conditions:

1.  At a height of $6 \, {}^{3}/_{8}$ inches, the platform adjacent to the conveyer belt is inaccessible to people with a disability;

2.  The color of the floor adjacent to the conveyer belt and the presence of a black-colored mat "makes it difficult for pedestrians to discern the presence of the significant change in level which exists in their immediate path of travel . . . ."; and

3.  The barrier reduced the clear width of the platform to 26 inches, whereas 36 inches of clearance is required.

Robbins Report at 3.[5]

---

[5] While the Robbins Report also concludes, based upon code regulations, that "[t]he subject security screening area has not been maintained in a safe and code-compliant condition," the Court does not consider this legal conclusion in deciding Defendant's motion. *Gill v. Jus Broadcast. Corp.*, No. 19-CV-4216(DLI)(PK), 2024 WL 4107251, at *4 (E.D.N.Y. Sept. 6, 2024) ("Those portions of the Expert Reports must be excluded as they constitute impermissible legal conclusions."); *Sec. & Exch. Comm'n v. Gel Direct Tr.*, No. 22-CV-9803(JSR), 2024 WL 1374902, at *10 (S.D.N.Y. Mar. 31, 2024) ("It is impermissible for experts to testify to legal conclusions."); *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 331 (E.D.N.Y. 2014) ("[T]hat the Report contains limited legal conclusions does not provide a basis to strike the entirety of the report.").

Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the Court determines it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175 (1999); *Daubert*, 509 U.S. at 590, 113 S. Ct. at 2795; *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 729 (E.D.N.Y. 2016) (explaining the applicable standards).  The Second Circuit has held that "Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  Nevertheless, under *Daubert* and its progeny, courts maintain "a 'gatekeeping responsibility' of 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Rodriguez v. British Airways PLC*, No. 17-CV-3691(BMC), 2017 WL 6372733, at *3 (E.D.N.Y. Dec. 12, 2017) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2799).  To this end, "[e]xpert testimony shall be excluded . . . when it is 'unhelpful and therefore superfluous and a waste of time.'"  *Soley v. Wasserman*, No. 08 Civ. 9262(KMW)(FM), 2013 WL 526732, at *2 (S.D.N.Y. Feb. 13, 2013) (quoting *In re Methyl Tertiary Butyl Prods.*

9

*Liab. Litig.*, 643 F. Supp. 2d 482, 493-94 (S.D.N.Y. 2009)).    Nevertheless, "in accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009).

In evaluating the admissibility of expert testimony, the trial court must consider whether:  (i) the witness is qualified as an expert on the topic at issue; (ii) the expert's opinion is based on reliable data and methodology; and (iii) the expert's opinion will assist the trier of fact. *Nimely*, 414 F.3d at 396-97.  "The proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the testimony is competent, relevant, and reliable." *SourceOne Dental, Inc. v. Patterson Cos., Inc.*, No. 15-CV-5440(BMC), 2018 WL 2172667, at *1 (E.D.N.Y. May 10, 2018).  Ultimately, the question of admissibility is left to the discretion of the trial court.  *Lara*, 2016 WL 1254023, at *5.  Here, there is no dispute regarding Robbins's qualifications or ability to provide relevant and reliable evidence.  Def.'s Mem. at 20.  Accordingly, the Court considers the content of his report.

The County asserts that Robbins's "entire report is based upon the false premises that Plaintiff either stepped up onto the security platform, or attempted to step onto the platform, and that she was reaching for her belongings or attempted to reach for he belongings at the time that her accident occurred." *Id.* at 14.  Defendant asserts that, contrary to the Robbins Report, "[t]here is unequivocal testimony from Plaintiff that [she] never stepped onto the platform or attempted to step up onto the platform prior to falling." *Id.* at 15.  Plaintiff concedes that as she approached the

10

platform, "[h]er toe/foot struck the step as she was moving to the conveyer and that caused her to lose her balance . . . ." Pl.'s Opp'n at 1.

In his report, Robbins states that Gutterman "was forced to step onto a platform," which Robbins measured to be 6 ³/₈ inches tall. Robbins Report at 2-3. His report further states that, as Plaintiff stepped onto the platform, "she tripped and fell, thereby sustaining a serious injury." *Id.* According to the County, Plaintiff testified that "she never saw the platform, never attempted to step on the platform, was never directed to step on the platform, nor did she attempt to reach for her belongings from the conveyor belt prior to falling," and that, therefore, "the accessibility of the platform in relation to the conveyor belt is of no consequence." Def.'s Mem. at 15. Contrary to this assertion, however, at her deposition, Gutterman testified that her toe hit the platform, causing her to fall and sustain the injuries alleged in this action. Gutterman Dep. Tr. 24:24 – 25:1, 35:13-15. Moreover, regardless of whether Plaintiff stepped on to the platform, the Robbins Report still reaches several relevant conclusions, namely that the platform at 6 ³/₈ inches was too high, that the color of the floor and platform made it difficult to discern the change in height, and that the width to clear the barrier was too narrow. All of these conclusions could be relevant to determine the cause of the accident, and, therefore, be helpful to the trier of fact in determining whether the County was negligent. Accordingly, the motion to preclude Robbins's expert report is denied.

11

## B.      Negligence Standard

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)); *see Coyle v. United States*, 954 F.3d 146, 148 (2d Cir. 2020) ("To establish liability under New York law, a plaintiff must prove (1) that the defendant owed her a duty; (2) that the defendant breached that duty; and (3) that she suffered injuries proximately resulting from that breach." (citing *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 393 (1985))); *Reynolds v. Amtrak*, 751 F. Supp. 3d 311, 321 (S.D.N.Y. 2024) ("Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.").

"Summary judgment is difficult to obtain in negligence actions because whether conduct is 'negligent' is a factual determination in all but the most extreme situations." *Du v. Party Perfect Rentals LLC*, 724 F. Supp. 3d 68, 72-73 (E.D.N.Y. 2024) (quoting *Ortiz v. Rosner*, 817 F. Supp. 348, 350-51 (S.D.N.Y. 1993)).  To this end, in *Ortiz*, the Court held that, "[a]s a general proposition, negligence questions are properly resolved at trial because, upon a motion for summary judgment, a court may not try issues of fact; it may only determine whether there are factual issues to be tried."  817 F. Supp. at 350-51; *see Palmieri v. Celebrity Cruise Lines, Inc.*, No. 98-

CV-2037(LAP)(HBP), 1999 WL 494119, at *3 (S.D.N.Y. July 23, 1999) ("While a claim of negligence does not preclude the granting of summary judgment, courts are generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of fact in all but the most extreme cases."). Applying these standards, Defendant's motion for summary judgment with respect to Plaintiff's remaining negligence claim is denied.

### C.    Defendant's Motion For Summary Judgment Is Denied

#### 1.    Plaintiff Did Not Fail to Provide Requisite Notice

Initially, Defendant asserts that it did not receive the required prior written notice of a dangerous or defective condition pursuant to Suffolk County Charter § C8-2A. Def.'s Mem. at 1, 10-14. The cited provision pertains to the Department of Public Works and provides that, absent prior written notification:

> [N]o civil action shall be maintained against Suffolk County or any of its departments, agencies, offices, districts, boards, commissions or subdivisions for damages or injuries to a person or property sustained by reason of any (a) highways; (b) roads; (c) streets; (d) parking lots and parking fields; (e) bridges; (f) grade separation structures; (g) culverts; (h) bulkheads; (i) tide gates; (j) revetments; (k) locks; (l) jetties; (m) piers; (n) docks; (o) fencing; (p) streetlighting; (q) drains and drainage structures; (r) sidewalks; (s) walkways; (t) boardwalks; (u) crosswalks and underpasses; (v) sewers; (w) manholes; (x) curbs; (v) gutters; (z) trees and tree limbs; (aa) street markings; (bb) traffic signs, signals or traffic control devices; (cc) step, steps, stairs and stairways; (dd) runways; (ee) taxiways; (ff) ramps; (gg) tie-down areas; (hh) access roads; (ii) fire roads and fire lanes; (jj) pathways; (kk) guide rails; (ll) buildings or other property and lands or any tree, bush, vegetation, appurtenance or structure in near proximity or attached to or necessary for the functioning of items (a) through (r) identified above . . . .

Suffolk Cnty. Charter § C8-2A(2)(i).

13

According to the County, the "County Charter provides that in the absence of such prior written notice, no claim may be maintained against the County." Def.'s Mem. at 11. Plaintiff counters that the interior lobby of the Courthouse is not covered under the Suffolk County Charter as the interior of the Courthouse "simply is not a: street, highway, bridge, culvert, sidewalk or crosswalk as contemplated by the Legislature of the State of New York . . . ." Pl.'s Opp'n at 3-4

The provision upon which the County relies neither applies to the Courthouse nor provides a basis for granting summary judgment. To the contrary, New York Courts have held that this provision only pertains to sidewalks and outdoor walkways. *Martorano v. McNair*, 208 A.D.2d 909, 909, 618 N.Y.S 568, 568 (2d Dep't 1994) ("It has been consistently held that the prior written notice laws should be strictly construed and refer to physical conditions in the streets or sidewalk[s], such as cracks and holes, which do not immediately come to the attention of municipal officers, unless they are given actual notice thereof."); *see Maccarello v. Cnty. of Suffolk*, 100 A.D.3d 972, 974, 954 N.Y.S.2d 609, 609 (2d Dep't 2012) ("When a governmental agency is acting in a proprietary capacity as a property owner or landowner, it owes the same duty to maintain its property as a private landowner.").

Moreover, a plain reading of the notice requirement in the Suffolk County Charter § C8-2A(2)(i) demonstrates that it does not apply to Plaintiff's claims. Instead, it applies to outdoor public spaces related to or impacting government property. *Martorano*, 208 A.D.2d at 909, 618 N.Y.S at 568. To this end, the cases upon which Plaintiff relies are inapposite, as they involve outdoor public spaces. *See,*

14

*e.g.*, *Yarborough v. City of New York*, 10 N.Y.3d 726, 728, 853 N.Y.S.3d 261, 261 (2008) (evaluating whether the city had "prior written notice under the Pothole Law"); *Amabile v. City of Buffalo*, 93 N.Y.2d 471, 473, 693 N.Y.S.2d 77, 77 (1999) (considering adequacy of notice of a defective sidewalk); *McCarthy v. City of White Plains*, 45 A.D.3d 828, 829-30, 863 N.Y.S.2d 500, 500 (2d Dep't 2007) (determining whether notice of a "sidewalk defect" had been provided to the municipal defendant); *Kaempf v. Town of Hempstead*, 170 A.D.2d 652, 652, 567 N.Y.S. 76, 76 (2d Dep't 1991) (addressing an "allegedly defective sidewalk"); *Monteleone v. Inc. Vill. of Floral Park*, 143 A.D.3d 647, 649, 532 N.Y.S.2d 874, 874 (2d Dep't 1988) (considering "notice of an obstructed sidewalk such as that which allegedly resulted by virtue of [a] low-hanging tree branch"). Accordingly, Defendant's motion for summary judgment is denied insofar as it is premised on an alleged failure to provide notice.

### 2.    Questions of Fact Preclude Summary Judgment

Defendant further argues that there were no dangerous or defective conditions at the Courthouse, and that, even if there were, they were open and obvious, thereby warranting summary judgment in the County's favor. Def.'s Mem. at 14-25. The Court disagrees. As set forth above, "summary judgment is difficult to obtain in negligence actions because whether conduct is negligent is a factual determination in all but the most extreme situations." *Du*, 724 F. Supp. 3d at 72-73 (internal quotation omitted); *Ashbaugh v. Windsor Cap. Grp., Inc.*, No. 10-CV-4647(ILG)(LB), 2012 WL 2319240, at *4 (E.D.N.Y. June 19, 2012) (denying motion for summary judgment where the "record [was] devoid of any evidence showing" that the plaintiff was aware of unsafe conditions); *Avis Budget Car Rental, LLC v. JD2 Env't, Inc.*, No. 12-CV-

5010(PKC), 2016 WL 3251394, at \*14 (E.D.N.Y. June 13, 2016) (denying motion for summary judgment where there questions of fact regarding the proximate cause of plaintiff's injury that were "best left for a jury to decide") (quoting *MCI Worldcom Network Servs., Inc v. Clearwater Drilling, Inc.*, No. 01 Civ. 9961(HB), 2002 WL 31444940, at \*1 (S.D.N.Y. Nov. 1, 2002)).   That being said, a landowner's responsibility has limits, and a landowner "has no duty to warn of an open and obvious danger." *Williams v. CVS Albany, LLC*, No. 20 Civ. 3741(VMS), 2022 WL 4111026, at \*2 (E.D.N.Y. Sept. 8, 2022).  Nevertheless, "the issue of whether a hazard is latent or open and obvious is generally fact-specific and thus usually a jury question." *Id.* (citations omitted).

Questions of fact exist regarding whether the area surrounding the magnetometer and x-ray platform were unsafe.  The photographs demonstrate that the rubber mat hung slightly over the edge of the platform.  Kobos Decl. Exs. J, M, N.  Likewise, a portion of the scanner extended beyond the platform.  *Id.*  Moreover, there are the issues identified in the Robbins Report addressed above.  Whether these conditions were dangerous, as well as whether they were open and obvious, is properly determined at trial.  *See Collins v. Proctor & Gamble, Inc.*, No 95-CV-701(JG), 1998 WL 812620, at \*3 (E.D.N.Y. Mar. 12, 1998) (denying summary judgment where there was a dispute regarding the factual situation that resulted in a personal injury); *Femenella v. Pellegrini Vineyards, LLC,* 16 A.D.3d 546, 547, 792 N.Y.S.2d 122, 122 (2d Dep't 2005) (holding that the issue of whether a danger condition was "open and obvious" was best considered by a jury); *Westbrook v. WR*

*Activities-Cabrera Mkts.*, 5 A.D.3d 69, 72, 773 N.Y.S.2d 38, 41 (1st Dep't 2004) ("The question of whether a condition is open and obvious is generally a jury question . . . ."). The fact that Gutterman testified that she did not step onto the platform, *see* Pl.'s 56.1 Stmt. ¶ 9, does not warrant a different outcome. To the contrary, given the location of the magnetometer, the overhanging mat, and the positioning of the conveyer belt above the platform, the photographs create further uncertainty as to whether Plaintiff's toe struck something, causing her to fall, before she stepped on the platform or even if she never stepped onto the platform, and whether fault rests with the County. Ultimately, this is a question of fact to be resolved by the jury and Defendant's motion for summary judgment is denied.

## IV.    CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment is denied. A pretrial conference is scheduled for April 21, 2026 at 10:30 a.m. in Courtroom 820 of the Central Islip courthouse.

Dated:    Central Islip, New York    **SO ORDERED.**
          March 24, 2026

                                      /s/ Steven I. Locke
                                      STEVEN I. LOCKE
                                      United States Magistrate Judge

17